United States District Court
Southern District of Texas
ENTERED
August 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NUSTAR ENERGY SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-03282 |
| | § | |
| M/V NORWEGIAN JEWEL, IMO NO. 9304045, *et al*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above-referenced admiralty case are Defendant/Interpleader-Plaintiff M/V Norwegian Jewel's ("Norwegian" or "Vessel") Motion for Reconsideration of the Order Denying its Motion for an Order Accepting the Funds Held in Escrow as the Interpleader Stake ("Motion for Reconsideration") (Doc. 27); Plaintiff NuStar's ("NuStar") Motion for Summary Judgment (Doc. 37); Memorandum and Recommendation ("M&R") of Magistrate Judge Stacy recommending denial of Norwegian's Motion for Reconsideration (Doc. 40); Norwegian's Objection to Magistrate's Report and Recommendations (Doc. 44); Interpleader-Defendant O.W. Bunker USA, Inc.'s ("OW USA") Motion for Extension of Time to File Objections to Object to Magistrate Judge's Memorandum and Recommendations, or in the Alternative, Objections to Magistrate Judge's Memorandum and Recommendations (Doc. 45); Norwegian Jewel Limited's ("Norwegian Jewel") Motion for Summary Judgment (Doc. 111); OW USA's Motion and Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 112); and NuStar's Amended Motion for Summary Judgment (Doc. 114).

Together these submissions raise two issues, namely (1) who is entitled to participate in

this case and under what conditions; and (2) who, if anyone, is entitled to a maritime lien for fuel supplied to the Vessel. Further complicating matters, a number of these issues have been taken up by other courts in factually similar cases also arising from the collapse of O.W. Bunker—one of which is currently on appeal in this circuit.

Having considered the parties' submissions,[1] the relevant law, and for the reasons outlined herein, the Court rejects the Memorandum and Recommendation (Doc. 40), grants Norwegian's Motion for Reconsideration (Doc. 27), and denies OW USA's Motion for Extension of Time (Doc. 45). In the interest of judicial economy, the remaining pending motions, NuStar, Norwegian Jewel, and OW USA's Motions for Summary Judgment (Docs. 37, 111, 112, 114) are stayed pending the outcome of the Fifth Circuit's decision in *Valero Marketing & Supply Co. v. M/V Almi Sun*, Case No. 16-30194.

## I. Background

### A. Bunkers, Bills, and Bankruptcy

This action—like over 50 others pending in various jurisdictions across the nation and involving some or all of the same parties—was precipitated by the 2014 collapse of O.W. Bunker, formerly one of the largest maritime fuel providers in the world. In October 2014, San Antonio-based fuel supplier NuStar twice contracted with an O.W. Bunker entity, OW USA, to supply fuel to the M/V Norwegian Jewel at Bayport, Texas. (Docs. 1 at ¶¶ 9–10; 1-1; 1-2.) The terms of both sales agreements required payment for the bunkers within 30 calendar days of delivery and provided for accrual of interest on any late payments. (Docs. 1 at ¶¶ 9–10; 1-1; 1-2.) In accordance with these sales agreements, NuStar delivered bunkers to the Vessel on October 11, 2014, and again on October 25, 2014. (Docs. 1 at ¶ 11; 1-4, 1-5.)

[1] The Court also reviewed the numerous responses, replies, and notices of supplemental authority related to these filings before reaching its decision. (Docs. 47, 48, 49, 50, 52, 53, 58, 59, 60, 62, 65, 70, 74, 81, 82, 98, 104, 106, 109.)

Upon arrival, the Vessel's Chief Engineer signed the Marine Fuel Delivery Note for each delivery and stamped it with the Vessel's seal. (Docs. 1 at ¶ 11; 1-4, 1-5.) The 30-day payment term of the sales agreements passed without remittance of the invoiced charges. (*See id.* at ¶¶ 13–14.) Accordingly, on November 14, 2014, NuStar initiated an arrest action *in rem* against the Vessel, alleging that it had acquired a maritime lien pursuant to the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. §§ 31301–31343, by providing "necessaries" to an authorized agent of the Vessel.[2] (*See* Doc. 1 at ¶¶ 13–19.) To avoid physical arrest of the Vessel, the parties negotiated an agreement whereby the fuel-invoice amounts would be placed in escrow pending resolution of NuStar's claims. (*See* Docs. 10, 25-2.) Subsequently, ING claimed a security interest and/or assignment of O.W. Bunker's accounts receivable and demanded that Norwegian pay it instead.[3] (Doc. 19 at 2.)

Two months later, Norwegian filed its Answer and Counterclaim in which it brought counterclaims in interpleader against NuStar, OW USA, and ING pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 22. (Doc. 18 at ¶¶ 33–34.) As the basis for its counterclaims, Norwegian asserted that it "ha[d] received multiple competing claims/demands for payment related to the bunker deliveries that form the basis of NuStar's complaint." (*Id.* at ¶ 27.) Based on this fact and because Norwegian had "already divested itself of the largest amount it is claimed to owe for the

[2] 46 U.S.C. § 31342 states:

> a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—(1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel.

[3] ING recently assigned all of its interests in the receivables arising from the transaction underlying this action, disclaimed any interest in the property that is the subject of this action, and has since been dismissed from this case. (*See* Docs. 110, 115.)

bunkers that were supplied to the Norwegian Jewel by placing $1,426,118.78 into an interest bearing escrow account," Norwegian simultaneously filed the first major motion of this case, an Opposed Motion for Order Accepting the Escrow Funds as the Interpleader Stake ("Motion for Interpleader Stake"). (Doc. 19 at 3.)

**B. The Court's Prior Order & the Magistrate's Memorandum & Recommendation**

When this Court was faced with Norwegian's Motion for Interpleader Stake, it was unaware of the number and complexity of—or similarity between—lawsuits spawned by O.W. Bunker's collapse. Without the benefit of this knowledge, on February 27, 2015, this Court denied Norwegian's Motion for Interpleader Stake "[f]or the reasons stated by NuStar in its opposition (#25). . . ." (Doc. 26.) The same day, Norwegian filed its Motion for Reconsideration (Doc. 27), which this Court referred to Magistrate Judge Stacy (Doc. 28). On June 24, 2015, Judge Stacy recommended denial of the motion. (Doc. 40.) In her M&R, she stated that

> Nothing in Norwegian Jewel Limited's Motion for Reconsideration negates those reasons or otherwise calls into question NuStar's insistence that Norwegian Jewel Limited abide by the terms of the agreement for security the parties reached on November 14, 2014, when this case was first filed. The fact that Norwegian Jewel Limited has now alleged an Interpleader Counterclaim and may face conflicting and inconsistent claims for payment for the fuel does not change the fact that Norwegian Jewel Limited – in November 2014 – bargained for and agreed upon an agreement for security so that the M/V NORWEGIAN JEWEL would not be arrested and its cruise voyage interrupted. As the denial of Norwegian Jewel Limited's "Motion for Order Accepting the Escrow Funds as the Interpleader Stake" fell within the Court's broad discretion in setting or accepting terms of security in *in rem* proceedings, *Keystone Shipping Co. v. SS Monfiorre*, 409 F.2d 1345, 1346 (5th Cir. 1969), it should not be disturbed.

*Id.* at 3.

**C. Other Courts Weigh In**

After Judge Stacy issued her M&R, the parties responded with a flurry of motions and briefs. As these now-pending motions piled up awaiting consideration, a number of other courts that were swept up in the flood of litigation following O.W. Bunker's demise began to rule on

many of the same issues that now face this Court.[4] As these decisions were issued, the parties began to cite these opinions in their briefs. Of most interest to this Court are two recent opinions issued by sister courts within this circuit: *Valero Marketing & Supply Co. v. M/V Almi Sun*, 14-2712, 2016 WL 475905 (E.D. La. Feb. 8, 2016) and *NuStar v. M/V COSCO AUCKLAND*, No. 4:14-cv-3648, 2015 WL 6457269 (S.D. Tex. Oct. 26, 2015).

**1. *Valero Marketing & Supply Co. v. M/V Almi Sun***

The facts of *Valero* mirror those in the case at bar. In the fall of 2014, pursuant to a fuel-supply contract with OW USA, Plaintiff Valero supplied marine bunker fuel to Defendant M/V Almi Sun at the Port of Corpus Christi. 2016 WL 475905, at *1. Like so many others, Valero was never paid for the bunkers it supplied due to O.W. Bunker's financial collapse. *Id.* In an effort to obtain the funds, Valero alleged it held a maritime lien and filed suit seeking vessel arrest. *Id.* at *1–2. Valero based its maritime-lien arguments on the fact that (1) OW USA acted as the agent or broker for the vessel, and/or (2) an authorized vessel officer acknowledged receipt of the fuel and stamped the bunkering certificate with the vessel's seal. *Id.*

On November 26, 2014, Valero's request was granted and a warrant of arrest was issued. *Id.* at *2. In order to avoid the vessel's physical arrest, Verna Marine Co. Ltd., the owner of the Almi Sun, then entered into a security agreement with Valero whereby a letter of undertaking was posted as the substitute *res* for Valero's claim against the vessel. *Id.* Several months later, on

[4] *See, e.g.*, *Valero Mktg. & Supply Co. v. M/V Almi Sun*, No. 14-2712, 2016 WL 475905 (E.D. La. Feb. 8, 2016); *Bunker Holdings v. M/V Ym Success*, C14-6002, 2016 U.S. Dist. LEXIS 73499 (W.D. Wa. June 6, 2016); *O'Rourke Marine Servs. L.P. v. M/V Cosco Haifa*, 15-cv-2992, 2016 WL 1544742 (S.D.N.Y. Apr. 8, 2016); *NuStar v. M/V COSCO AUCKLAND*, No. 4:14-cv-3648, 2015 WL 6457269 (S.D. Tex. Oct. 26, 2015); *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, 14-CV-9262 VEC, 2015 WL 4005527 (S.D.N.Y. July 1, 2015), *aff'd sub nom. Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016).

June 5, 2015, Valero filed a motion for summary judgment to collect on its claim, which the court denied on December 28, 2015, because it concluded that, as a matter of law, Valero did not have a maritime lien against the vessel. *Id.* However, because Verna had filed a cross-motion for summary judgment six days before the court decided Valero's motion and Valero then filed its opposition and a motion for reconsideration a month later, the court again took up the maritime-lien question. *Id.* at *6.

In their submissions to the court and at oral argument on these motions, the parties raised substantially the same arguments and cited the same cases as the parties do here. *See id.* at *2–4. In a thorough opinion discussing its previous order, weighing the factors courts use to determine the existence of a maritime lien, and examining the relevant case law in light of the parties' new arguments, the district court again concluded that "Valero cannot establish that the provision of necessaries to a vessel were made 'on the order of the owner or a person authorized by the owner'" as required to establish a maritime lien under the CIMLA. *Id.* at *8 (quoting 46 U.S.C. § 31342). Perhaps recognizing that unless the district court's decision was overturned its only recourse for payment was to assert a claim against OW USA as an unsecured creditor in the bankruptcy action, *see id.* at *2 ("Verna contends that Valero's proper remedy is to make a claim against O.W. USA in the company's bankruptcy proceedings, along with other creditors, rather than 'jump the line' by asserting a maritime lien."), Valero filed a notice of appeal on March 7, 2016 (No. 14-2712, Doc. 51). The parties now await the Fifth Circuit's judgment.

**2. *NuStar v. M/V COSCO AUCKLAND***

*COSCO AUCKLAND* is another factually similar case in this district involving many of the same parties. In 2014, the owners of four COSCO vessels ordered fuel bunkers from COSCO Petroleum, which then appointed an agent to procure the bunkers. 2015 WL 6457269, at *1. This agent ultimately contracted with O.W. Bunker Far East, which in turn contracted with OW USA

for the requested fuel. *Id.* OW USA then contracted with NuStar to physically supply the vessels. *Id.* Upon delivery, the chief engineer for each vessel accepted and signed for the deliveries. *Id.* NuStar subsequently invoiced OW USA but was never paid. *Id.*

NuStar then sought payment by asserting maritime liens against the vessels. *Id.* However, before NuStar filed suit, NuStar and the COSCO vessel owners reached an agreement whereby NuStar would refrain from physical arrest in exchange for deposit of the disputed funds into an escrow account. *Id.* NuStar subsequently filed its complaint. *Id.* The COSCO vessels responded by asserting a claim for interpleader relief under Fed. R. Civ. P. 22 and 28 U.S.C. § 1335, naming O.W. Far East, OW USA, and ING as counter-defendants and arguing that the escrowed funds satisfied the bond requirements for statutory interpleader. *Id.* at *2. ING then filed a counter-claim against NuStar, which NuStar responded to by filing a motion to dismiss. *Id.*

NuStar asserted that interpleader was invalid because, according to the terms of the security agreement between NuStar and COSCO, the escrowed funds can only be paid to NuStar if it holds a maritime lien. *Id.* ING responded that interpleader was proper because ING and NuStar have "competing claims for payments on the same bunker deliveries, exposing the COSCO vessel owners to multiple liability on the same obligations." *Id.* NuStar also argued that ING's claims should be dismissed because it was not a proper party and had no standing to assert a claim to the escrowed funds. Pl.'s Mot. to Dismiss And Answer to ING Bank N.V.'s Counter-Claims/Cross-Claims, *COSCO AUCKLAND*, No. 4:14-cv-03648, ECF No. 35.

Without analyzing whether the escrowed funds could be used as the interpleader stake without violating the terms of the escrow agreement, the court held that because COSCO had not deposited the disputed funds into the registry of the court, the requirements for statutory interpleader had not been met. 2015 WL 6457269, at *2. Nevertheless, Judge Ellison granted

interpleader under Rule 22, because "Rule 22 does not necessarily require that a discrete stake or fund be at issue," only that "the threat of multiple litigation . . . arise[s] from some single obligation of the plaintiff to one or more competing claimants." *Id.* (internal citation and quotation marks omitted). The court concluded that this requirement was met because "the COSCO vessels each faced competing claims to a maritime lien—by NuStar, O.W. USA, and ING Bank, on behalf of O.W. Far East—based upon the delivery of the same bunkers. These claims arise from a single obligation: the obligation of the vessels to pay for the fuel they received." *Id.* at *3. In denying NuStar's motion to dismiss, the Court stated that "[i]t is not necessary for ING Bank to have standing to assert a claim against the escrowed funds in order for ING Bank to be a proper party in this interpleader; it is enough that its claims are adverse to NuStar's, and that, with regard to the maritime liens, the COSCO vessels could not 'justifiably be found liable' to both parties." *Id.*

**II. Norwegian's Motion to Reconsider and the Memorandum and Recommendation**

Like the vessels in *COSCO AUCKLAND*, Norwegian filed its counterclaim in interpleader pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 22 because it considers ING, OW USA, and NuStar to be adverse claimants to a single fund, namely, the amounts owed for the fuel delivered to the vessel. (*See* Doc. 18 at ¶ 28.) In its Motion for Reconsideration, Norwegian argues that its Motion for an Order Accepting the Funds Held in Escrow as the Interpleader Stake should be granted for five reasons: (1) Norwegian will continue to satisfy all of its obligations under its agreement with NuStar; (2) NuStar will continue to be fully secured for its claim if the escrowed funds are accepted as the interpleader stake; (3) interpleader is clearly the proper procedural tool for resolving the competing claims; (4) if the escrowed funds are not

accepted as the interpleader stake, Norwegian, O.W. Bunker, and ING[5] all would be prejudiced; and (5) principles of equity and fundamental fairness strongly weigh in favor of accepting the escrowed funds as the interpleader stake. (Doc. 27-1 at 2.) Norwegian also alleges that the amount held in escrow represents the largest invoiced amount claimed by any of the parties and will, therefore, cover the claims of whichever party prevails.[6] (*Id.* at 4.)

After Judge Stacy recommended denial of Norwegian's motion, Norwegian, OW USA, and ING[7] filed objections. (Docs. 44, 45, 46.) OW USA asks this Court for an additional 14 days to file objections to the M&R because it had not even filed its Notice of Appearance when the M&R was issued and, therefore, was not served or provided with the M&R. (Doc. 45-1 at 4–5.) In the alternative, OW USA adopts Norwegian's arguments and urges this Court not to adopt the M&R. (Docs. 44, 45-1 at 5–8.)

In support of their arguments that interpleader is appropriate and the M&R should be rejected, Norwegian and OW USA both direct the Court's attention to a ruling by the Southern District of New York in a number of similar interpleader cases arising from O.W. Bunker's collapse and published after Judge Stacy's M&R.[8] (*See* Docs. 44 at 1, 45-1 at 7–8.) OW USA

---

[5] ING has since been dismissed from the case. (Doc. 115.)

[6] According to Norwegian, the total amounts it was invoiced for by the parties are: NuStar: $1,420,118.78; OW USA $1,420,997.92; ING: $1,420,997.92 (for its security interest in the amount invoiced by OW USA). (Doc. 27-1 at 4 n.3.)

[7] Because ING has been dismissed from the case the Court will not address ING's arguments herein.

[8] In this opinion, Judge Caproni rejected arguments by NuStar and another fuel supplier that their claims were "separate and distinct" from other parties' claims against the vessel interests. *UPT Pool*, 2015 WL 4005527, at *5. She instead held that the court had subject matter jurisdiction over the interpleader actions because *in rem* claims against the vessels and *in personam* claims against the vessel interests were all adverse claims arising out of a single obligation—the vessels' obligation to pay for fuel. *Id.* On appeal, the Second Circuit affirmed this decision, noting that adjudication of the vessels' obligation to pay for the fuel bunkers "involves inextricably intertwined claims, and interpleader jurisdiction is proper under the broad and remedial nature of § 1335." *Hapag-Lloyd Aktiengesellschaft*, 814 F.3d at 153.

further argues that the use of the plural "claims"[9] in the NuStar-Norwegian security agreement does not preclude the funds from being used to cover multiple claims and that NuStar is erroneously characterizing the funds as a letter of undertaking or special bond. (Doc. 45-1 at 6–7). OW USA also joins Norwegian in arguing that Norwegian's motion should be granted in the interest of equity. (*Id.* at 7.)

In its response, NuStar first argues that OW USA's request for additional time to file objections should be denied because it has been on notice of the pending case since the OW bankruptcy action was initiated in November 2014. (Doc. 58 at ¶1.) Additionally, NuStar alleges that the Security Agreement between NuStar and Norwegian covers only NuStar's claims and OW USA's attempt to incorporate Norwegian's arguments from its previous filings does not constitute a valid objection. (*Id.* at ¶¶ 2, 5.) Finally, NuStar asserts that OW USA does not have standing, Judge Caproni's opinion has no bearing on this case, and its claims are not inextricably interrelated to the claims asserted by OW USA. (*Id.* at ¶¶ 3, 7–14.) NuStar recycles a number of these arguments in its response to Norwegian, but additionally argues that because Norwegian's objections referenced arguments in its yet-to-be-filed Memorandum in Opposition to NuStar's Motion for Summary Judgment (Doc. 48), which was filed two days after the deadline for objections to the M&R, its response was untimely. (Doc. 59 at ¶¶ 1–3.)

**A. Legal Standard**

"A district court has broad powers in an interpleader action." *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). Interpleader actions generally proceed in two stages. *Id.* First, the Court determines whether the jurisdictional requirements for rule or statutory interpleader have

[9] The provision of the agreement that OW USA cites states: "The funds shall be treated in all respects as if deposited into the registry of the court, and held in escrow to satisfy any final judgment rendered by the court, or settlement between the parties, in relation to claims arising out of or relating to the subject bunker supplies." (Doc. 25-2 at 1–2.)

been met by determining whether there is a single, identifiable fund subject to multiple adverse claims. *Id*. The party seeking the interpleader, known as the stakeholder, bears the burden to establish that these requirements have been satisfied. *Underwriters Grp., Inc. v. Clear Creek Indep. Sch. Dist.*, CIV.A. G-05-334, 2006 WL 1852254, at *3 (S.D. Tex. June 30, 2006) (citation omitted). If he does so, he may then seek dismissal before the case proceeds further. *Id.*

At the second step of the analysis, the court determines the claimants' rights to the fund. *Rhoades*, 196 F.3d at 600 (citation omitted). At this stage, when there is no genuine issue of material fact as to which party is entitled to the funds, the claims may be adjudicated by summary judgment. *Id.* (citation omitted). If genuine issues of material fact do exist, however, each claimant bears the burden of proving his right to the fund by a preponderance of the evidence at trial. *Id.*

**B. Analysis**

In her opinion addressing interpleader issues in a number of similar cases involving OW entities, ING, and various fuel suppliers and vessel interests, Judge Caproni of the Southern District of New York aptly noted that "the Interpleader Actions present interesting and apparently novel questions regarding the interplay among United States bankruptcy law, maritime law and the federal interpleader statutes." *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, 14-CV-9262 VEC, 2015 WL 4005527, at *1 (S.D.N.Y. July 1, 2015), *aff'd sub nom. Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016). The Court agrees.

One such novel and interesting question is the interplay between statutory interpleader and maritime security agreements. Under Supplemental Admiralty and Maritime Claims Rule E(5)(a), a stay of execution of marine attachment and garnishment process or *in rem* process, or the release of the property, may be obtained by giving security in the amount approved by the

court or clerk or by stipulation of the parties, conditioned to answer the judgment of the court or any appellate court in the action. Under these arrangements "[a] special bond or letter of undertaking effectively replaces the arrested property for purposes of the *in rem* action, allowing the owner to continue to use the property, while providing the plaintiff with security for any judgment it may obtain against the vessel." *El Paso Prod. GOM, Inc. v. Smith*, 406 F.Supp.2d 671, 674 (E.D. La. 2005). However, unlike general bonds, which are conditioned on court approval and may secure the claims of others who intervene in the suit after bond has been posted and the vessel released, a letter of undertaking ("LOU") or special bond secures only the claim of the plaintiff in the particular action for which it is posted. *Id.* at 674–75; *Overstreet v. Water Vessel Norkong*, 538 F. Supp. 53, 54 (S.D. Miss. 1982), *judgment aff'd*, 706 F.2d 641 (5th Cir. 1983).

NuStar cites *Overstreet* in support and argues that

> "[t]he terms of the agreement are clear and unambiguous: Norwegian is obligated to deposit $1,426,118.78 into an escrow account; the funds serve as substitute security solely for NuStar's in rem maritime lien claim against the M/V NORWEGIAN JEWEL; and, NuStar's in rem maritime lien claim will attach to those funds, which serve as substitute res in place of the vessel."

(Doc. 25 at ¶ 4.)

NuStar is correct to point out that *Overstreet* stands for the proposition that later-asserted separate claims cannot be secured by a single special bond negotiated to secure vessel release. However, the Court does not see *Overstreet* as an impediment to granting Norwegian's motion. In that case, a seaman asserted claims for injuries sustained while employed on the Norkong. 706 F.2d at 642. To secure the vessel's freedom from arrest, the owner supplied a special bond. *Id.* Over a year later, the seaman's estranged wife sought to intervene in the case on her and her children's behalf to assert a cause of action for loss of consortium and claimed that the bond

covered her claims as well as her husband's. *Id.* at 642–43. The Court disagreed, finding that Mrs. Overstreet's claim was "a separate claim, asserted by a separate party, for separate damages." *Id.* at 643. As a result, the Fifth Circuit held that the Supreme Court's rationale for refusing to allow additional claimants to intervene in *The Oregon*, 158 U.S. 186 (1895), was squarely on point: (1) permitting an intervention might prejudice the original claimant if the sureties were unable to respond to the full amount of all of the claims, and (2) stipulators would be prejudiced because they could not be expected to anticipate or estimate the cost of additional potential claims when agreeing to post a special bond for one claim. *Id.* at 643–44.

The case at bar is different from *Overstreet* in two important respects. First, there are not separate claims for separate damages asserted in this case. As two other district courts have easily concluded, the competing claims of OW USA, ING, and the various fuel suppliers in these cases are based upon the delivery of the same bunkers and are, therefore, based on the same claim: payment for these bunkers. *UPT Pool Ltd.*, 2015 WL 4005527, at *5; *COSCO AUCKLAND*, 2015 WL 6457269, at *3. Second, the concerns expressed in *The Oregon* are absent here. There is no concern that Norwegian will be unable to respond to the full amount of the successful claim. The parties are competing for the same funds—the maximum amount of which is already in escrow. Nor would the parties be prejudiced by uncertainty or surprise. All of the parties in this case have been aware of the competing claims of NuStar, ING, and OW USA—or at least the possibility of competing claims—since O.W. Bunker entered into bankruptcy proceedings, which was around the same time that the NuStar-Norwegian security agreement was executed. In short, none of the concerns that motivated the *Overstreet* or *The Oregon* courts are present here. Moreover, in the Fifth Circuit, "interpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as

to protect him from double liability." *Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984) (internal citation and quotation marks omitted).

Importantly, even were the Court to conclude that statutory interpleader is barred by the NuStar-Norwegian agreement, rule interpleader would still be appropriate without Norwegian having to post additional security. *See COSCO AUCKLAND*, 2015 WL 6457269, at *2–3 (holding that the vessels' interpleader action could proceed under Rule 22 without a further deposit of funds to the registry of court). Accordingly, the M&R is rejected and Norwegian's Motion for Reconsideration is granted. The escrowed funds shall constitute the stake for Norwegian's interpleader action. Furthermore, given the Court's disposition of the interpleader issue, rejection of the M&R, and the length of time that has passed since its motion was filed, the Court denies OW USA's Motion for Extension of Time to File Objections to Memorandum and Recommendations (Doc. 45) as moot.

**III. Cross Motions for Summary Judgment (Doc. 37)**

Generally, after concluding that an interpleader action was properly brought, a court proceeds to the second step of the analysis, which requires it to determine the "claimants' respective rights to the fund." *Underwriters*, 2006 WL 1852254, at *8 (internal citation and quotation marks omitted). Here, the parties have thoroughly briefed the issues and their motions would normally be ripe for consideration at this juncture. However, there have been a number of recent developments that are relevant to the Court's analysis.

Notably, in a series of recent decisions with organizational and factual scenarios nearly identical to those in the case at bar, several district courts have come to the conclusion that the unpaid fuel suppliers who contracted with O.W. Bunker entities to supply vessels are not entitled to maritime liens. *See Valero*, 2016 WL 475905, at *650; *Bunker Holdings v. M/V Ym Success*,

C14-6002, 2016 U.S. Dist. LEXIS 73499, at *11 (W.D. Wa. June 6, 2016); *O'Rourke Marine Servs. L.P. v. M/V Cosco Haifa*, 15-cv-2992, 2016 WL 1544742, at *4–5 (S.D.N.Y. Apr. 8, 2016). These cases are persuasive and would be very useful to the Court in making a determination in this case. However, the *Valero* decision has since been appealed to the Fifth Circuit. As we will be bound by the Fifth Circuit's decision, in the interest of judicial economy the Court declines to address the parties' motions for summary judgment at this time. The issue of who is entitled to a maritime lien—and the escrowed funds—is stayed pending the outcome of the *Valero* appeal.

**V. Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Judge Stacy's Memorandum and Recommendation (Doc. 40) is **REJECTED**, Norwegian's Motion for Reconsideration (Doc. 27) is **GRANTED**, and OW USA's Motion for Extension of Time to File Objections to Memorandum and Recommendations (Doc. 45) is **DENIED** as moot. The Court accepts the sum of $1,426,118.78 plus interest, currently held in escrow "as if deposited into the registry of the Court," as the stake for Norwegian's interpleader action.

This remainder of this action is **STAYED** pending the Fifth Circuit's decision in *Valero Marketing & Supply Co. v. M/V Almi Sun*, Case No. 16-30194. The Clerk's Office is **ORDERED** to **ADMINISTRATIVELY CLOSE** this case. The Court grants leave to any party to move to reinstate the case on the Court's active docket pending the resolution of *Valero*. The parties are further **ORDERED** to notify the Court as soon as they learn of the Fifth Circuit's ruling.

SIGNED at Houston, Texas, this 12th day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE